**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SANDRA CHAVARRIA,

    Plaintiff,                                           Case No. 2:08-cv-14234
                                                                       Hon. Lawrence P. Zatkoff

v.

METROPOLITAN LIFE INSURANCE
COMPANY, a foreign corporation, and
ANDRES CHAVARRIA,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on June 25, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court upon cross-motions for summary judgment filed by Plaintiff Sandra Chavarria ("Sandra") and Defendant Andres Chavarria ("Andres"). The parties have fully briefed the issues and filed all appropriate responses and replies. The Court finds that the facts and legal arguments pertinent to the parties' motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Sandra's Motion for Summary Judgment (Docket #15) is GRANTED, and Andres' Motion for Summary Judgment (Docket #16) is DENIED.

### II. BACKGROUND

This case arises from a dispute over the proceeds of a life insurance policy insuring the life of Francisco Chavarria ("Decedent"). Decedent, a former employee of Detroit Diesel Corporation, was a participant in the Detroit Diesel Life and Disability Program ("Plan"). The Plan included a life insurance policy on Decedent through Metropolitan Life Insurance Company ("Met Life"). Sandra, the ex-wife of Decedent, was the initial beneficiary designated on the Met Life policy. By the time Decedent and Sandra divorced on May 16, 2005, however, Decedent had named his son Andres the beneficiary on the Met Life policy. The Judgment of Divorce, which incorporated Decedent's and Sandra's property settlement, provided the following waiver of rights under a section entitled "Statutory Insurance Provision":

> IT IS FURTHER ORDERED AND ADJUDGED that any rights of either [Sandra] or [Decedent] are hereby extinguished, unless specifically preserved by this JUDGMENT OF DIVORCE particularly [Decedent's] obligation to maintain [Sandra] as beneficiary to protect the spousal support award, in and to the proceeds of any policy or contract of life insurance, endowment or annuity insurance of the other upon the life of [Sandra] or [Decedent] in which either was named or designated as a beneficiary, or to which either became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective shall hereupon become and be payable to the estate of the deceased party or such named beneficiary as he or she shall affirmatively designate.

The Judgment specifically provides in another section entitled "Alimony/Spousal Support" that:

> IT IS FURTHER ORDERED AND ADJUDGED that [Decedent] shall maintain [Sandra] as beneficiary on his existing Life Insurance Policy, in declining balance of Spousal Support owed, for as long as the Spousal Support obligation continues.

At all times, the only life insurance policy on Decedent was the Met Life policy. When Decedent died on June 13, 2008, the last beneficiary designation of record was dated December 10, 2002, and it named Andres as the sole beneficiary of the insurance proceeds.

Andres submitted a claim for the life insurance benefits under the terms of the Plan. Sandra submitted a rival claim alleging that she is the rightful beneficiary by reason of the Judgment of Divorce. Met Life, upon consent of the parties, paid for certain of the costs associated with

Decedent's funeral arrangements and interpled the balance of the funds into the Court. The dispute over who is entitled to the remaining proceeds of the Met Life policy is now before this Court.

### III.  LEGAL STANDARD

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

### IV.  ANALYSIS

**A.     The Judgment of Divorce Satisfies QDRO Requirements**

Under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), administrators generally are obligated to manage ERISA plans "in accordance with the documents and instruments governing" them.  §1104(a)(1)(D).  Andres contends that ERISA preempts the Judgment of Divorce.  Generally, state court divorce decrees purporting to affect the benefits payable from an ERISA plan are preempted. *See Kennedy v. Plan Adm'r for Dupont Sav. and Inv. Plan*, --- S.Ct. ---, 2009 WL 160440 (U.S.); *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126 (6th Cir.1996); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990); *Barsh v. General Motors Corp.*, Case No. 2:04-cv-72324 (E.D. Mich. 2005). More specifically, ERISA requires covered benefit plans to "provide that benefits . . . under the plan may not be assigned or alienated[.]" §1056(d)(1).

3

ERISA preemption of state court divorce decrees, however, does not apply to qualified domestic relations orders ("QDROs"). §1056(d)(3). A QDRO is defined as an order:

> (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan and
>
> (II) with respect to which the requirements of subparagraphs (C) and (D) are met . . . .

29 U.S.C. § 1056(d)(3)(B)(I) and (II). The requirements of a QDRO are set forth in 29 U.S.C. §1056(d)(3)(C), which states:

> A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies -
>
> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

In this case, the Court finds that the Judgment of Divorce entered on May 16, 2005 satisfies the QDRO requirements. First, by specifying that Sandra shall be the beneficiary, the Judgment of Divorce effectively named an alternate beneficiary. *Compare Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 417 (6th Cir. 1997) (finding that the judgment of divorce substantially complied with the requirements of a QDRO because it named alternate beneficiaries), *with Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996) (concluding that a broad waiver of rights provision contained in a judgment of divorce is insufficient for a named beneficiary's rights to be extinguished).

Second, because the Judgement of Divorce specifies that a QDRO shall be entered regarding

the Decedent's pension benefits, the names and addresses of the participants are unambiguous and can be ascertained by reviewing the pension QDRO. Although the Judgment of Divorce does not clearly specify the amount or percentage of the benefits to be paid or the number of payments, life insurance proceeds are paid in a lump sum. As the Judgment of Divorce required that Decedent maintain Sandra as beneficiary of the life insurance policy, the language of the Judgment of Divorce is sufficient to meet this requirement. *See Marsh*, 119 F.3d at 422.

Andres contends that the QDRO requirements are not satisfied because the Judgment of Divorce did not specify the life insurance policy on which Decedent had to maintain Sandra as beneficiary. The Court will not "demand literal compliance where Congress' intent has been to give effect to domestic relations orders where it is clear what the decree intended." *Marsh*, 119 F.3d at 423. In this case, the Judgment of Divorce expressly stated that Sandra was to remain the beneficiary on Decedent's "existing Life Insurance Policy." The Court has been provided no evidence that Decedent ever had any other policy. Therefore, there is no ambiguity as to which life insurance policy the Judgment of Divorce referred.

For the reasons set forth above, the Court finds that no essential information is lacking and no ambiguity exists as to the intent of the Judgment of Divorce. Therefore, the Court concludes that (1) the Judgment of Divorce is specific enough to substantially comply with ERISA's requirements for a QDRO, and (2) the terms of the Judgment of Divorce (and not ERISA) govern in this case. Accordingly, Sandra is entitled to the balance of the proceeds of the Met Life policy.

**B.      Equity Dictates that a Constructive Trust is Appropriate**

In this case, the Court also concludes that, even if the Judgment of Divorce did not constitute a QDRO and ERISA applies such that Andres would be entitled to the Met Life policy proceeds, equity dictates that a constructive trust be imposed such that Sandra would be entitled to the Met Life policy proceeds. A constructive trust may be imposed "where such trust is necessary to do equity or to prevent unjust enrichment . . . ." *Ooley v. Collins*, 344 Mich. 148, 158 (1955). The party seeking the imposition of the constructive trust has the burden of proof. *Krammer Asphalt*

5

*Paving Co. v. East China Township Sch.*, 443 Mich. 176, 188 (1993).

When a plan participant violates a court order requiring a change to the plan beneficiary, the court may impose a constructive trust in favor of the court-ordered beneficiary. *Southwest Areas Pension Fund v. Howell*, 227 F.3d 672 (6th Cir. 2000). In *Howell*, the court concluded that when the decedent violated a court order and changed the beneficiaries of his insurance policy from his wife to his children, his wrongdoing entitled his wife to the imposition of a constructive trust over the plan proceeds. *Howell*, 227 F.3d at 676. According to the *Howell* court, such situations warrant the imposition of a constructive trust:

> [O]ur precedents are clear – the beneficiary card controls the person to whom the plan administrator must pay the benefits. However, we hold today that once the benefits have been released to the properly desig-nated beneficiary, the district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires.

*Id.* at 679.

Like the defendant in *Howell*, Decedent violated the court-ordered Judgment of Divorce. Decedent misrepresented himself when signing the Judgment of Divorce, wherein he stated that he "[had] not engaged in any assignment, transfer, or concealment of assets or liabilities which would have in any way materially affected the good faith negotiations between the parties . . ." even though he previously had designated Andres as the Plan beneficiary on December 10, 2002. Decedent therefore failed to comply with the express provision in the Judgment of Divorce which ordered that Decedent "maintain" Sandra as the beneficiary of the Decedent's existing life insurance policy. Decedent also violated the provision in the Judgment of Divorce that required the parties to "execute such documents as are necessary to effect the terms of this Judgment." Thus, although the named beneficiary at the time of the divorce was Andres, these provisions required the Decedent to execute a new change of beneficiary document naming Sandra as the beneficiary. As the Judgment of Divorce is a binding contract, *MacInnes v. MacInnes*, 260 Mich. App. 280 (2004), the Decedent's failure to perform his duties under that contract entitle Sandra to an equitable solution. A constructive trust would afford Sandra the benefit of the bargained-for divorce agreement and rectify

the injustice that would result if she were deprived of such benefit because Decedent violated the Judgment of Divorce.

The Court further notes that, even absent a violation of a court order by a plan participant, a constructive trust may be appropriate if a decedent's intended beneficiary can be determined. *See Metropolitan Life Insurance v. Mulligan*, 210 F. Supp. 2d 894, 900 (E.D. Mich. 2002) (finding that a hearing would be necessary to determine whether equity ought to prescribe a result different than required by ERISA based on competing factual claims as to decedent's intended beneficiaries on his life insurance policy). In this case, it is undisputed that Decedent intended Sandra to be the beneficiary of the Met Life policy. His intent is shown by (1) the Judgment of Divorce he signed, wherein he agreed to maintain Sandra as the beneficiary of his existing life insurance policy, (2) the affidavits of Sandra indicating the same, and (3) the affidavit of Decedent's divorce attorney, who also stated that Decedent's intent was to name Sandra the beneficiary. Therefore, as the undisputed evidence demonstrates Decedent's intent when executing the Judgment of Divorce was that Sandra would be the beneficiary of the Met Life policy, a constructive trust is appropriate to promote equity.

Accordingly, for the reasons set forth above, the Court concludes that the principles of equity favor the imposition of a constructive trust to award the remaining proceeds from the Met Life policy to Sandra.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Sandra's Motion for Summary Judgment awarding Sandra the remaining proceeds from the Met Life policy (Docket #15) is GRANTED, and Andres' Motion for Summary Judgment (Docket #16) is DENIED.  Judgment shall be entered accordingly.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
**LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE**

**Dated:  June 25, 2009**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 25, 2009.

S/Marie E. Verlinde
**Case Manager
(810) 984-3290**